Doyle Glenn BOULWARE, Appellant,

v.

The STATE of Texas, Appellee.

No. 50524.

Court of Criminal Appeals of Texas.

Oct. 6, 1976.

---

Tom S. McCorkle, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Douglas Mulder, Jim Burnham and Steve Tokoly, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

### PART I

DOUGLAS, Judge.

In a trial before a jury, appellant was convicted of murder with malice of Donald Tucker, a peace officer acting in the lawful discharge of his official duty. Punishment, under the provisions of Article 1257(b)(1), V.A.P.C.,[1] and Article 37.071, V.A.C.C.P.,[2] was assessed at death.

Sometime near 11:00 p. m. on December 12, 1973, appellant went to the home of his ex-wife, Jewel Boulware, from whom he had been divorced for twelve days. Present at the house when he arrived were J. W. Cobb, Jewel's brother, Jewel's twelve-year-old daughter, and two friends. Jewel Boulware arrived shortly thereafter. At the time appellant was under a peace bond obtained by her. As Jewel attempted to telephone a friend, appellant grabbed the telephone, saying: "You're not going to call the police." He then produced a .357 magnum pistol and said: "I'm going to kill you. I'm tired of you lying to me." A violent argument ensued during which he slapped her several times and choked her to unconsciousness. He then dragged her to a bedroom, continually repeating: "I'm going to kill you." He also announced that ". . . he would kill the first one that called the cops or the first cop that walked through the door." At one time, a friend tried to call her by phone, but appellant answered and had a lengthy, very abusive threatening conversation with the caller. The friend notified the police, and Police Officers Ross and Tucker, who were in separate cars, were sent to the house. Both were in full police uniform. When the officers approached the door, a small dog barked, and appellant stated: "There's somebody at the damn door," and ran out of the bedroom holding the .357 magnum pistol. As Officer Tucker started to talk through the front door with Ross following, Ross heard Tucker say: "Put down the gun, put it down." Ross heard appellant say: "Officer." Appellant then fired at Tucker, the bullet entering the left side of his face and exiting at the back of his neck. Tucker fell and died almost immediately. While Ross was examining the fallen Tucker, Cobb struggled with appellant and was able to subdue him and secure the pistol. Ross handcuffed appellant's arms behind his back and left him with Cobb while he, Ross, went out to call an ambulance and other officers. When he came back the handcuffed appellant had run out the back door. Officer Baker, responding to a radio summons, searched a back alley, and after a few min-

---

1. As amended, Acts 1973, 63rd Leg., p. 1122, ch. 426, Art. 1, Sec. 1, effective June 14, 1973. Section 19.03 of the new Penal Code is substantially similar to old Code Article 1257 as amended. The evidence establishes that the crime was committed on December 12, 1973.

The trial was in April, 1974, after the effective date of the new Penal Code.

2. Added by Acts 1973, 63rd Leg., p. 1125, ch. 426, Art. 3, Sec. 1, effective June 14, 1973.

utes located appellant "laying on his stomach under the bushes." As Baker pulled the handcuffed appellant to his feet, he said: "You punk, you just killed a police officer." Appellant then said: "Yeah, you're damned right I did." The sufficiency of the evidence is not challenged.

In a supplemental brief on appeal, appellant for the first time raises the contention that in the selection of the trial jury the court erred in failing to apply properly the standards of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

In selecting the jury, each member of the panel was questioned by counsel individually in the absence of the others. It appears from the transcription of the voir dire examination that of the one hundred and two prospective jurors questioned twenty were excused because of their attitude toward the death penalty. Counsel for appellant[3] concedes in his supplemental brief that eighteen of these twenty panel members were excused by agreement of counsel for the State and for appellant.

This Court wrote in *Tezeno v. State*, 484 S.W.2d 374 (Tex.Cr.App.1972), a death penalty case in which the *Witherspoon* issue was raised on appeal:

"Where the mere demeanor of the witness cannot contradict his express words so as to give them a meaning in opposition to that which they state, nevertheless, in those instances where the meaning is apparent, but is not stated as clearly as might be desired, elements such as demeanor and tone of voice, etc. are important factors in conveying the precise message intended. As was the case with Mrs. Norwood, appellant's counsel expressly waived objection,[2] and the court did not question the venireman. We do not feel that this Court, having only a 'cold' record before us, can unequivocally ignore the actions of those present, in the face of no express language by the venireman which would negate our conclu-

sion, and in the face of language which, at the worst, is only lacking in force."
Footnote 2 on page 383 reads:

"Waiver of objection apparently will not, in itself, vitiate an improper challenge. It is, however, a factor to be considered in cases such as the one at bar, where the exact meaning of a venireman's answer cannot be ascertained with total accuracy from the words of his answer alone. The trial judge being present and having an opportunity to observe, the ruling of the trial court should not be disturbed in the absence of a showing of clear abuse of discretion."

The above remarks are applicable to the instant appeal. A review of the voir dire examination of the excused jurors supports the admissions of appellant's counsel that not only were the eighteen venire members excused without objection but also as stated by counsel in his brief by mutual agreement of both parties. As stated in *Tezeno*, this Court cannot unequivocally ignore the actions of those present at the trial in the face of no express language by the venire members which would negate our conclusion, and in the face of language which, at the worst, is only lacking in force.

■ Recent opinions of the United States Supreme Court show that all federal constitutional error is not reversible error. That Court handed down two opinions on the same day wherein an accused's conviction was affirmed because of his failure to urge a constitutional right, *Estelle v. Williams*, 425 U.S. 50, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). In *Estelle v. Williams*, the Court held that absent an objection the accused was not denied due process or equal protection of the laws because of wearing identifiable prison clothing during his trial before a jury. While in *Francis*, the Court, relying on its opinion in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), held that a state prisoner who failed

**3.** Appellant's counsel who filed this brief was also trial counsel who participated in the voir dire examination.

to make a timely challenge, as required by a state rule of procedure, to the composition of the grand jury that indicted him could not after his conviction bring that challenge in a federal habeas corpus proceeding.

In *Estelle v. Williams* the Court, in reversing the Fifth Circuit, discussed several cases wherein the harmless error doctrine was held applicable to cases where a defendant had been tried in prison garb. Mr. Justice Black in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), wrote:

> "We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding, as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' . . We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

The Court in *Estelle v. Williams* recognized that many courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. It said: ". . . that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire." In a footnote, the Supreme Court distinguished the *Estelle v. Williams* case from that of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), wherein it was confronted with an alleged relinquishment of the fundamental right to assistance of counsel, stating that in this case and similar cases it has not ". . .

engaged in this exacting analysis with respect to strategic and tactical decisions, even those with *constitutional implications*, by counselled accused." (Emphasis supplied).

In *Estelle v. Williams*, the record shows that no objection had been made to the trial judge concerning the jail attire either before or at any time during the trial. In the present case, no objection was made to the trial judge when the eighteen venire members were excused for cause without exhaustive questioning in accordance with *Witherspoon* and Article 37.071, V.A.C.C.P. The record shows that with respect to sixteen of the eighteen the prosecuting attorney either stated, "we agree", or "both sides agree", without a corresponding statement from appellant's counsel. His counsel specifically agreed to the action of the court as to two of the eighteen venire members in question as the record shows that he said, "we'll agree" and "excused". Since counsel for appellant expressly agreed to the court actions on two occasions and made no objection to the court's action on sixteen others shows implied approval. The record is void of any evidence which warrants a conclusion that there was sufficient reason to excuse the failure to raise the issue at the time of voir dire.

In *Francis*, Justice Stewart in speaking for the majority quoted from *Davis v. United States*, supra, in comparing the two cases:

> "The waiver provisions of Rule 12(b)(2) are operative only with respect to claims or defects in the institution of criminal proceedings. If its time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of trial. If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. *Strong tactical considerations would militate in favor of delaying the raising of the claim*

*in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult."* 411 U.S. at 241, 93 S.Ct. at 1582. (Emphasis supplied)

In *Davis*, a federal prisoner, represented by counsel, was denied habeas corpus relief because he had failed to assert in a timely manner his challenge to the allegedly unconstitutional composition of the grand jury that had indicted him in advance of trial as required by Rule 12 of the Federal Rules of Criminal Procedure.

In each of these cases, as in the present case, the accused was represented by counsel and the right involved was a trial-type right. Therefore, as was stated by Mr. Justice Powell in a footnote to his concurring opinion in *Estelle v. Williams*: "The right involved here is a trial-type right. As a consequence, an attorney's conduct may bind the client. See *Henry v. Mississippi*, [379 U.S. 443] at 451–452, 85 S.Ct. [564] at 569, 13 L.Ed.2d [408] at 415." The issue with which we are faced here can only be resolved against appellant's contention. To do otherwise would allow counsel two, if not more, opportunities to obtain an acquittal. It would allow defense counsel to purposely "sandbag" the trial judge into error if he received an adverse verdict. As the Supreme Court said in *Estelle v. Williams*:

"Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system."

In *Marion v. Beto*, 434 F.2d 29 (5th Cir. 1970), cert. denied 402 U.S. 906, 91 S.Ct. 1372, 28 L.Ed.2d 646, it was held that the exclusion for cause in a capital case of even one prospective juror on the ground of conscientious scruples against the death penalty deprives an accused of an impartial jury as required by the Sixth and Fourteenth Amendments. Marion's original trial took place prior to the *Witherspoon* opinion being handed down. *Marion v. Beto*, supra, was acknowledged by this Court in *Grider v. State*, 468 S.W.2d 393 (Tex.Cr.App.1971). Grider's conviction was reversed because the procedure used in excusing prospective jurors after an initial expression of "conscientious scruples" or disclaimer of belief in capital punishment without going further and ascertaining that the prospective juror would automatically vote against the death penalty in any case regardless of the facts or consider its imposition in the case irrespective of the evidence did not square with *Witherspoon* or the traditional Texas practice.

All of the cases discussed so far and other cases such as *Ex parte Martin*, 479 S.W.2d 280 (Tex.Cr.App.1972), and *Ocker v. State*, 477 S.W.2d 288 (Tex.Cr.App.1972), were tried prior to the date of the *Witherspoon* opinion. No objection to a prospective juror was required in the cases tried before the *Witherspoon* opinion because that right was not known to attorneys before then.

We have held that our Texas practice did not violate *Witherspoon* in *Pittman v. State*, 434 S.W.2d 352 (Tex.Cr.App.1968); *Scott v. State*, 434 S.W.2d 678 (Tex.Cr.App. 1968); and in *Harris v. State*, 457 S.W.2d 903 (Tex.Cr.App.1970). The Supreme Court, without discussing the difference between our procedure and that of the State of Illinois, set aside Harris' conviction in 403 U.S. 947, 91 S.Ct. 2291, 29 L.Ed.2d 859 (1971), and cited *Maxwell v. Bishop*, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970), and *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969). Both *Maxwell* and *Boulden* involved pre-*Witherspoon* convictions as did *Harris*.

At the time the convictions were set aside by the Supreme Court of the United States, that Court would not uphold any conviction where the penalty of death had been assessed. The Supreme Court of the United States, as now constituted, has upheld the death penalty in *Gregg v. Georgia*, —— U.S. ——, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek v. Texas*, —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and *Proffitt v.*

*Florida,* —— U.S. ——, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and has held that objections must be made at the trial to preserve for review errors of constitutional dimension.

This Court was faced with a similar situation following the United States Supreme Court's decision in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), wherein it was held: "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." In *Ramirez v. State,* 486 S.W.2d 373 (Tex.Cr.App.1972), that decision was given retroactive effect in Texas. See also *Walker v. State,* 486 S.W.2d 330 (Tex.Cr.App. 1972). Then, in *Ex parte Casarez,* 508 S.W.2d 620 (Tex.Cr.App.1974), we held that where an accused's trial occurred prior to *Argersinger* counsel's failure to object upon a ground not yet established as a defect of constitutional magnitude did not constitute a waiver, citing *Ex parte Taylor,* 484 S.W.2d 748 (Tex.Cr.App.1972).

■ The waiver rule was not applied to cases tried after *Argersinger.* See *Wright v. State,* 511 S.W.2d 313 (Tex.Cr.App.1974), where the defendant was convicted of the felony offense of driving a motor vehicle upon a public road while intoxicated, subsequent offense. Wright contended on appeal that the misdemeanor conviction alleged in the primary offense was void because he was not represented by counsel at that conviction. No objection was made to the introduction of the judgment and other papers reflecting the misdemeanor conviction complained of on appeal. His trial occurred almost one year after *Argersinger.* In distinguishing *Ex parte Casarez,* supra, we held that Wright's ". . . failure to object when the complained of exhibits were offered into evidence constitutes a waiver of the claimed rights. *Ex parte Gill,* Tex. Cr.App., 509 S.W.2d 357; *Ex parte Bagley,* Tex.Cr.App., 509 S.W.2d 332." A constitutional ground may be waived by a failure to object. *Thompson v. State,* 537 S.W.2d 732 (Tex.Cr.App.1976); *Mutscher v. State,* 514

S.W.2d 905 (Tex.Cr.App.1974); *United States v. Lazarus,* 425 F.2d 638 (9th Cir. 1970). See also *Wright v. State,* supra. In *Gibson v. State,* 516 S.W.2d 406 (Tex.Cr. App.1974), this Court wrote:

". . . It has repeatedly been held that even constitutional guarantees can be waived by failure to object properly at trial, including an illegal arrest, *Bardwell v. State,* 489 S.W.2d 627 (Tex.Cr.App. 1973); *Bowie v. State,* 401 S.W.2d 829 (Tex.Cr.App.1966), the admission of the fruits of an illegal search, *Ashford v. State,* 502 S.W.2d 27 (Tex.Cr.App.1973); *Mortier v. State,* 498 S.W.2d 944 (Tex.Cr. App.1973); *Northcutt v. State,* 478 S.W.2d 935 (Tex.Cr.App.1972); *Brown v. State,* 457 S.W.2d 917 (Tex.Cr.App.1970); *Perez v. State,* 394 S.W.2d 797 (Tex.Cr. App.1965), an improperly conducted lineup or tainted identification, *Robinson v. State,* 502 S.W.2d 819 (Tex.Cr.App.1973); *Lee v. State,* 459 S.W.2d 851 (Tex.Cr.App. 1970); and the voluntariness of a confession, *Taylor v. State,* 489 S.W.2d 890 (Tex.Cr.App.1973); *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.App.1972); *Harris v. State,* 465 S.W.2d 175 (Tex.Cr.App. 1971); *Born v. State,* 411 S.W.2d 739 (Tex.Cr.App.1967). . . ."

■ A failure to timely object waives any error in the admission of evidence and presents nothing for review. *Shumake v. State,* 502 S.W.2d 758 (Tex.Cr.App.1973).

In *Hovila v. State,* 532 S.W.2d 293 (Tex. Cr.App.1976), we held that *Witherspoon* is alive and is equally applicable under the procedure set forth in Article 37.071, V.A.C. C.P., and went on to say that in *Hovila's* case the cursory examination of the veniremen was insufficient to meet the test promulgated by the United States Supreme Court in *Witherspoon* and as applied by this Court in *Grider.*

■ In view of the recent decisions of the Supreme Court of the United States that a constitutional guarantee may be waived by a defendant's counsel for the failure to object such as to the improper

organization of a grand jury at the trial level and our decisions above discussed on waiver, we hold that the failure to object to the improper exclusion of a venire member waives that right and it cannot be considered on appeal. *Hovila v. State*, supra, and all cases insofar as they hold to the contrary are overruled. See also *Tezeno v. State*, supra.

■ We hold that, absent an objection, the trial court did not err in excusing the jurors, Hurse and Holt, even though they were not questioned as thoroughly as they might have been with reference to their ability to render the death penalty no matter what the trial may reveal.

■ Appellant next contends that the trial court abused its discretion in excusing, over his objection, venire member Dariline Harris. On the voir dire examination, the prosecuting attorney explained the provisions of Article 1257(d), V.A.P.C. [V.T.C.A., Penal Code, Section 12.31(b)], and of Article 37.071(b), V.A.C.C.P., and asked her and received answers as follows:

"If you were on the jury, and you know about this mandatory sentence of death or life, would that affect the way that you answered those questions?

"Yes, sir.

"In other words, you'd answer one of the questions no to see to it that he wouldn't get the death penalty?

"Yes.

"Is that right?

"Yes."

Although appellant attempted to rehabilitate her, she at no time stated that the mandatory penalty of death or imprisonment for life would not affect her deliberations on any issue of fact. Under Article 1257(d), V.A.P.C., incorporated in V.T.C.A., Penal Code, as Section 12.31, she could not be a fair and impartial juror. The trial court properly held her to be disqualified. See *Moore v. State*, 542 S.W.2d 664.

Since an agreement was followed in the selection of the jurors and because there was no objection to the action of the trial court to the dismissal of the prospective jurors long after *Witherspoon v. Illinois*, supra, had been decided, no reversible error has been shown.

The judgment is affirmed.[4]

---

4. Other grounds of error are overruled. They have been discussed in Part II of this opinion. They add nothing to the jurisprudence and will not be published. See *Thompson v. State*, 514 S.W.2d 275 (Tex.Cr.App.1974), and *Wood v. State*, 523 S.W.2d 248 (Tex.Cr.App.1975). The matters discussed include: admission of statements made immediately after his arrest; scope of cross-examination; denial of offer of impeachment evidence; alleged violation of husband-wife privilege, and complaints about the court's charge.