Lynn WILMOTH *v.* STATE of Arkansas

CR 86-153                                724 S.W.2d 148

Supreme Court of Arkansas
Opinion delivered February 16, 1987

*L. Gene Worsham* and *Beth Gladden Coulson,* for appellant.

*Steve Clark,* Att'y Gen., by: *William F. Knight,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Lynn Wilmoth has appealed from an order denying a Rule 37 petition alleging that his plea of guilty to four counts of sexual abuse was involuntary, the product of mental duress and coercion. Lynn Wilmoth and Dr. Robert Thompson were jointly charged with twenty-one counts of deviate sexual activity with Lynn Wilmoth's son, Terry. The acts were alleged to have occurred over a two year period when Terry was less than fourteen years of age. The trials were severed and

Dr. Thompson was tried first. He was convicted on twenty counts and a sentence of 200 years and a fine of $200,000 was imposed. On appeal the judgment was affirmed. *Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983).

On the morning of Lynn Wilmoth's trial Terry Wilmoth announced he did not want to testify. The trial judge appointed Miss Kelly Carithers, public defender, to represent Terry and told her he would order Terry to testify. After meeting with Terry privately she informed the court that Terry would not testify.

Terry Wilmoth was called to the witness stand by the state. He answered preliminary questions but when asked if his father had taken him to Dr. Thompson's house on February 24, 1980 (count 1), he refused to answer. The trial judge ordered him to answer and warned him if he refused he would be held in contempt and jailed until he purged himself of contempt by answering the questions. Terry again conferred with Miss Carithers and she reported "I think he wants to go ahead and testify. He understands the consequences and he chooses to testify."

Terry Wilmoth returned to the witness stand. He testified that he was then fifteen years old; he identified Lynn Wilmoth as his father, said he had been living with foster parents in Morrilton for about a year, that his father had taken him to Dr. Thompson's house a number of times—more than five but just how many he could not say. We quote from the record:

Q: When you were over at Dr. Thompson's house, did Dr. Thompson ever do anything to you sexually? All right let me ask the question a different way. Terry, are you familiar with the terms anus and penis?

A: Yes.

Q: Okay. When you were over at Dr. Thompson's house, did Dr. Thompson ever put anything in your anus? Terry, let me ask the question another way. Did Dr. Thompson ever put his penis in your anus? Terry, do you recall testifying at the prior trial that Dr. Thompson put his penis in your anus?

MR. DOUGLASS:

Your Honor, I'm going to ask the Court to instruct the witness —

MISS KELLY CARITHERS, PUBLIC DEFENDER:

May I talk to him for a minute, please?

THE COURT:

Yes.

(THEREUPON, Miss Carithers, who was appointed by the Court to represent the witness, conferred privately with the witness, then the following proceedings occurred:)

THE COURT:

Mr. Wilmoth, answer the question.

MR. DOUGLASS, Continuing:

Q: Terry, when you were over at Dr. Thompson's house, did Dr. Thompson put his penis in your anus?

A: Yes.

Q: Okay. Now, you testified just a few minutes ago that you went to Dr. Thompson's house more than five times. Is that correct?

MR. DOUGLASS:

Your Honor —

THE COURT:

Mr. Wilmoth, the Court is going to instruct you to answer the questions and that means to continue to answer the questions. And I wouldn't think it would be necessary to stop and re-order you each time.

Now, do you need some time? Do you want a drink of water or you want some time to compose yourself?

MR. WORSHAM:

Your Honor, may I approach the Bench.

At this point defense counsel indicated to the court that

Lynn Wilmoth wanted to accept a proposal that had been rejected earlier, that he plead guilty to four specific counts in return for consecutive ten year sentences, a total of forty years. Lynn Wilmoth was called to the bench and confirmed that that was his decision. The court then proceeded to conduct a hearing on the guilty pleas in accordance with A.R.Cr.P. Rule 24 during which the pleas were accepted and the plea bargain approved.

Some two years later Lynn Wilmoth petitioned under A.R.Cr.P. Rule 37 to withdraw his pleas of guilty. At a hearing he testified that he had rejected an offer to plead guilty to four counts but changed his mind after the trial began when Terry started crying. The petition was denied and Wilmoth has appealed.

Appellant refers us to several cases, but they touch only remotely on the issue. In each of those cases the defendant was directly pressured to plead guilty to certain charges under circumstances that were found on appeal to be improper. In *Collum* v. *State*, 244 Ark. 290, 424 S.W.2d 523 (1968) we permitted the withdrawal of a guilty plea because Collum was threatened with the revocation of a seven year suspended sentence if he did not plead guilty to crimes he alleged he did not commit. In *United States* v. *Anderson*, 468 F.2d 440 (5th Cir. 1972), the District judge announced that if the defendant testified at his jury trial as he had at a suppression hearing he was facing two counts of perjury. He told the defendant "You are looking at possible maximum penalties of thirty years plus the fines." The defendant withdrew his not guilty plea in the face of those remarks. On appeal he was permitted to withdraw the plea because the trial judge exerted "an improper influence, prejudicial to the defendant's unqualified right to stand trial." Similarily, in *United States* v. *Schmidt*, 376 F.2d 751 (4th Cir. 1967), after Schmidt was convicted of one count of bank robbery, with two additional charges pending trial, the trial judge, relying on news articles, proceeded to tell him he might well be charged with kidnapping, that he would "never be free of confinement" if he continued on the "thorny row" he was following. The appeals court ordered withdrawal of guilty pleas taken in that environment, "we deplore the remarks [by the District judge] and the injudicious way in which the proceeding was conducted."

This case more nearly resembles *Drake* v. *State*, 172

N.W.2d 664 (S.C. Wisc. 1969). Drake sought to withdraw a plea of guilty of assisting in a jail escape, arguing "strong elements of coercion" in that his wife was suspected of having participated in bringing a hacksaw blade into the jail. The Wisconsin Supreme Court rejected the argument that his concern for his wife coerced his plea, saying the coercion was "self-imposed," which did not "weaken the voluntary and knowledgeable aspect of an act based upon it."

In this case no pressure was exerted by the court or the prosecutor on Lynn Wilmoth to plead guilty. Wilmoth argues that the anguish demonstrated by his son created a coercive pressure on him. We have no doubt the circumstances caused a wrenching experience for the appellant, but for several reasons we think they do not constitute the sort of coercion necessary to withdraw a guilty plea entered knowingly and in strict adherence to A.R.Cr.P. Rule 28.

For one thing, the record compels the conclusion that a large part of Terry Wilmoth's discomfort was the result of pressure put on him by his father not to testify against him. The state introduced a letter written to Terry by his father exhorting him in the strongest terms not to testify, or to lie if necessary, rather than telling the truth, and reminding him that "the key" to his coming back home from a foster home was his not testifying. Appellant contends this letter was not delivered to Terry, but we can reach no definite conclusion about that, nor need we try, as it is clear that ample opportunity existed for communication between Terry and his father. Thus, the appellant's professed concern for his son's anguish would be more convincing if he had not added to that condition by his own illegal acts.

Moreover, we note that Lynn Wilmoth's decision to spare Terry from the ordeal was delayed until well after it became apparent that Terry *was* going to testify, albeit reluctantly, and indeed had begun to provide specific answers about the visits to Dr. Thompson's house with his father. It is of some significance that when Terry first announced that he would not testify the state moved that he be considered "unavailable" under A.R.E. Rule 804 and his testimony from the Thompson trial be read to the jury. This would have relieved Terry of the ordeal Lynn Wilmoth now decries, but the state's proposal brought an

immediate and forceful objection from the defense and that alternative was pursued no further.

Nor can we agree with appellant's repeated argument that Terry was being compelled to testify in conformity with his testimony in the Thompson trial. We have searched the record and we are satisfied that no such inference may be drawn from the remarks of the trial judge. Defense counsel posed that same concern at one point in the trial:

MR. WORSHAM:

I would want to make this objection. I think in essence the witness has been told that the court says that the testimony that he gave at the Thompson's trial is truthful. This is prejudged. And that if he doesn't testify as he did in the Thompson trial that he's going to be prosecuted for perjury.

THE COURT:

On the contrary. On the contrary, Mr. Worsham —

MR. WORSHAM:

Uh —

THE COURT:

Just a minute. The only testimony I've heard is that. I don't know whether that is true or not. There may be some discrepancies in that that he may have remembered now. And I would not expect him to remember word for word. All I expect him to do is tell the truth. There may be some differences this time than there were last time. Just because there are some differences doesn't necessarily mean it's perjury as you well know.

There were other comments by the court in a similar vein which satisfy us that while Terry Wilmoth was firmly ordered to testify under penalty of contempt, he was *not* ordered, even implicitly, to fashion his testimony according to the Thompson trial, but to testify truthfully. The contempt powers of a court to order witnesses to render testimony necessary to either the defense or the prosecution is not subject to doubt. *Morrow* v. *Roberts*, 250 Ark. 822, 467 S.W.2d 393 (1971). We find no abuse

of that power in this case.

■ Whether Lynn Wilmoth's greater motivation was to spare his son from a painful experience, or to spare himself from a far heavier sentence than the one he bargained for, we will not attempt to decide. It is clear that when Terry began to give the facts, Lynn Wilmoth was confronted with the reality that the state was set to prove each of the twenty-one counts, twenty of which had been upheld in the Thompson trial, resulting in maximum sentences on each count, a staggering total of 200 years and $200,000. It is a fair assumption, we believe, that Lynn Wilmoth's decision was prompted as much by a desire to avoid that ominous prospect as to protect his son.

The overriding factor in this case, we believe, is the irrefutable evidence that appellant knowingly and voluntarily entered a plea of guilty to acts he admittedly committed. He not only acknowledged unequivocally that he had done the things with which he was charged, but that his son's testimony, however reluctant, was true. He makes no serious attempt to deny those acts even now. See *Crockett* v. *State*, 282 Ark. 582, 669 S.W.2d 896 (1984) and *Welch* v. *State*, 283 Ark. 281, 675 S.W.2d 641 (1984).

Affirmed.