Woods *v.* Pearce.

5-1896                                                   327 S. W. 2d 377

Opinion delivered September 21, 1959.

*McMillen, Teague & Coates,* by: *Eugene F. Mooney, Jr.,* for appellant.

*Odell Pollard,* for appellee.

Carleton Harris, Chief Justice. This is an appeal from a judgment entered in the White Circuit Court against appellants in a personal injury and property damage action, arising from a collision between appellants' truck and appellee's automobile, occurring on highway No. 67 in White County on the morning of November 10, 1957. Appellee, Quenten C. Pearce, accompanied by his eight year old son, Randy, was driving south on the highway, and about three miles from Bradford, started to execute a left turn into a dirt road

which crosses the highway at that point. Appellants' truck, driven by R. W. Flerry, which had been following behind the automobile, in endeavoring to pass, collided with the car, the extreme left front of the truck striking the right rear of appellee's vehicle. The car was damaged, appellee suffered some injuries, and Randy received a broken leg. Complaint was subsequently filed, seeking $1,465 for damages to the automobile, $2,500 for injuries sustained by Pearce, and $15,000 for injuries sustained by the child. Appellants denied liability, alleging that the collision and injuries resulting therefrom were "solely and directly caused and contributed to" by the negligence of appellee, in that "the plaintiff carelessly, negligently, and without giving any signal of any kind, began to angle his car across the center line of the highway to the left. Defendant Flerry gave loud and continuously warning by his horn but plaintiff Pearce carelessly and negligently continued to angle left across highway and failed to yield the right-of-way to the overtaking vehicle on audible signal, as required by § 75-609, Ark. Rev. Stats. * * *" On trial, the jury found that Flerry was guilty of negligence which proximately caused the injuries, and that Pearce was guilty of contributory negligence in a percentile of 25%. They found that Pearce suffered $1,800 damages, and his son $7,500 damages. Judgment was accordingly entered for a total of $8,850, apportioned $1,350 to Quenten C. Pearce and $7,500 to Pearce as father and next friend of Randy Pearce. In seeking a reversal, appellants rely on three points, as follows:

"I.

Giving Plaintiff's Instruction Number Five Was Reversible Error Because It Is A Binding Instruction and Inherently Erroneous.

II.

It Was Prejudicial and Reversible Error to Admit the Opinion Testimony of the Policeman as to the Course and Location of the Truck at the Point of Impact.

## III.

The Verdict was Grossly Excessive and Should be Reduced or Set Aside Because Not Supported by the Evidence and Fixed Through Jury Prejudice.''

We proceed to a discussion of each point.

## I.

Flerry and Pearce gave conflicting versions of the manner in which the collision occurred. Pearce testified that he saw the truck from his rear view mirror before making the left hand turn. He testified that Flerry was in the right hand lane at all times, and that he (Pearce) had turned on his left blinker light about 150 yards before reaching the turning point. To the contrary, Flerry testified that he was in the act of passing, and was already even with the left rear fender of appellee's automobile at the time the turn was started, and further, that he sounded his horn before starting to pass; that he saw no signal for a left turn, and was only 12 or 15 feet behind Pearce, and entirely in the left hand lane, when the brake light of the automobile came on. The instruction complained of reads as follows:

''You are instructed that if you find from a preponderance of the evidence that the plaintiff gave a proper signal for a left hand turn for the last 100 feet prior to entering the intersection and you further find from a preponderance of the evidence that defendant, R. W. Flerry, was not then in the act of passing plaintiff, then you are instructed that plaintiff had the right-of-way and that defendant was under a duty to yield the right-of-way to plaintiff.''

Appellants contend that this was a binding instruction, and inherently erroneous. We do not agree. The proof showed that the highway, at the point where the collision took place, was a straight, level highway, and there was no traffic approaching from the opposite direction; nor was there traffic on the dirt road which crossed the highway at the point of collision. It is also undisputed that the weather was clear. Since these matters were

not in controversy, it was unnecessary to include in the instruction any reference to other traffic. Specifically, appellants complain that the instruction ignored the statutory requirement that the turn be attempted only if it could be made with reasonable safety. They contend the instruction "binds" the jury to return a verdict based only on that particular instruction, and disregards other factors which could have occasioned the collision.

Black's Law Dictionary (4th Edition) defines a binding instruction as "one in which jury is told if they find certain conditions to be true to find for plaintiff or defendant as case might be." In our own case of *Reynolds* v. *Ashabranner,* 212 Ark. 718, 207 S. W. 2d 304, we defined a binding instruction as "one which tells the jury that, if only the conditions stated in that one instruction are found to exist, then the jury will determine the case. In other words, the instruction in effect 'binds' the jury to return a verdict based only on such instruction." While a binding instruction is generally concluded with the phrase "you will find for the plaintiff" or "for the defendant," we concur with counsel for appellants that the mere absence of the phrase itself does not necessarily keep an instruction from being binding. We are of the opinion that this instruction is awkwardly worded, but we do not agree that it is either binding or erroneous. The instruction states the law as to right-of-way, *but there is nothing in the instruction which says that the failure to yield the right-of-way ipso facto establishes defendant's liability, or that such act was negligence per se.* The failure to yield the right-of-way (if found to be true) was only a circumstance to be considered in determining whether appellants' driver was negligent. The jury was not foreclosed, by this single instruction, from examining all the facts and circumstances, and it is apparent from the verdict that it *did* examine *all* the circumstances. Among other instructions, the court instructed the jury that "no person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety * * *," and the first instruction given

was "you are not to single out any one of these instructions and consider it alone, but you are to take them all together, and consider them all together, as one harmonious whole, and as the law in this case." The fact that appellee was found guilty of contributory negligence in a percentile of 25% clearly proves that additional instructions were considered. While surmising as to a jury's reasoning is always speculative, it would certainly appear from the verdict that the jury found the signal was given by appellee more than 100 feet before reaching the intersection, at a time when Flerry was not attempting to pass, and further, that Flerry negligently attempted to go around appellee before the intersection was reached, but that appellee, in making the turn, was also negligent to a degree, in failing to ascertain that the truck had approached so closely behind him. Be that as it may, the jury obviously gave consideration to appellants' version of the manner in which the collision took place. We are unable to agree with counsel that the giving of Instruction No. 5 constituted reversible error.

## II.

Gerald Harris, a state policeman, who investigated the collision, told the jury where he found the vehicles located after the occurrence, described the damage to the automobile and truck, and testified there were no skid marks. He then, without objection, gave his opinion, from the physical facts, as to where the impact took place. Following Flerry's testimony, Harris was called back for re-examination, and was asked:

"Q. You have just heard Mr. Flerry's testimony to the effect that the impact, at the time of the impact, he too agreed that the Pearce vehicle was leaving the highway at somewhat of a 45 degree angle, but that his vehicle, instead of being straight down the highway as it is drawn there, that he was in the passing lane and was cutting back into the south bound lane; did you hear or understand him to so testify?

A. Yes, sir.

Q. In your opinion, Mr. Harris, had the truck have been coming from the passing lane at an angle over into the south bound lane at the exact instant of the impact, and leave the car at the same angle you stated it was, what effect would that change of the angle of the wreck have had on the path the car would have followed?

Counsel for appellants: I object to that for the reason that it does not describe the angle Mr. Flerry said he was traveling.

The Court: The objection is overruled."

Appellants say that this testimony had the effect of permitting Harris to give his opinion on the truthfulness of Flerry's testimony, and that this was highly improper and prejudicial. It is not necessary for us to consider this assertion, since no objection was made on that basis. The sole objection was simply that the question did not accurately state Flerry's testimony. As long ago as 1898, this Court, in the case of *Kahn* v. *Lucchesi,* 65 Ark. 371, said:

"But the making of the objection specified had the effect of waiving all other objections, and hence there was no error in not rejecting the evidence on other grounds not specified in the objection made."

See also *Cooper* v. *Chapman,* 226 Ark. 331, 289 S. W. 2d 686, which, as here, dealt with the sufficiency of the objection to certain evidence given by a state policeman.

### III.

It is finally urged that the judgment given appellee as father and next friend of Randy Pearce in the amount of $7,500 was excessive. The evidence reflects that Randy suffered a great deal of pain, and the medical evidence was to the effect that a fracture, of the nature involved, is extremely painful. Medical expenses for the boy amounted to $740; he spent two weeks in the hospital, four months in bed with a cast on his leg, and there was evidence that he was unable to place full weight on his leg until over nine months after the injury was sustained. The testimony reflected that a six or

seven inch incision was made, and the bone put back in place, after which a metal plate was placed over the bone, by means of inserting four screws into the latter, which was for the purpose of holding the bone in place. It was the opinion of Dr. M. C. Hawkins, Jr., that the plate would have to be removed at some time in the future, and the Doctor testified that this would require hospitalization for a period of a week or ten days, and the boy would probably be inactive for an additional three weeks; the expense of such operation was estimated at $300 to $350. Though it appears there is no permanent injury, in view of the facts outlined in this paragraph, we are unable to say that the verdict is excessive.

Finding no reversible error, the judgment is affirmed.