BENNY A. RINKE ET UX v.

JOHN WOODROW SHACKLEFORD

5-5231 455 S. W. 2d 83

Opinion delivered June 8, 1970
[Rehearing denied June 29, 1970.]

*U. A. Gentry,* for appellants.

*J. H. Carmichael, Jr.,* for appellee.

FRANK HOLT, Justice. This is a suit by the appellee to quiet title against any right, title, claim or interest of the appellants in certain lands and to confirm the title in appellee. The facts are not disputed.

Prior to 1915, the lands in question were owned by George E. Cockmon. In that year they were sold to the State of Arkansas for the nonpayment of taxes and subsequently conveyed, in 1918, by way of tax deeds, to Paul A. Birnbach. In 1919 Birnbach conveyed the property by quitclaim deed to F. A. Rinke and Bruno Rinke as tenants in common. On January 11, 1935, F. A. Rinke was adjudged mentally incompetent, committed to an institution, and remained incompetent continuously from that date until his death on January 28, 1965. He died intestate. Subsequently, Benny A. Rinke, appellant, acquired all the rights of the widow and heirs of F. A. Rinke.

Appellee bases one of his claims to title on various tax deeds which were issued either to John D. Shackleford, his uncle and predecessor in title to part of these lands, or to himself. Most of the lands claimed by appellee were acquired from the State consequent to the failure of the Rinkes to pay taxes in 1923 and 1931. Five of the constituent lots, however, were forfeited and sold for the delinquent taxes of 1937—*i. e.,* two years subsequent to the adjudication of F. A. Rinke as an incompetent.

John D. Shackleford, appellee's uncle, instituted a suit in 1933 by an ex parte proceeding in the Pulaski Chancery Court resulting in a decree confirming title in him to all the lands constituting the subject matter of that suit and which now comprise most of the lands involved in the instant suit. (This confirmation of title did not, of course, include the five lots sold for taxes in 1937 and later purchased from the State by appellee.) Appellee acquired his uncle's interest in 1937 through a devise from him. In 1938 appellee fenced

all the property in question and since then has occupied, paid taxes upon, and improved the property, using it as a dairy farm.

In his initial pleadings and proof, appellee asserted title by virtue of the tax deeds purchased by his predecessor in title, John D. Shackleford, and reinforced by the 1933 confirmation of title; by virtue of the tax deeds which he, himself, purchased; and, also, on the theory of adverse possession coupled with payment of taxes and color of title therefrom. Appellee also submitted a 1965 quitclaim deed from Annie Cockmon and Claudia L. Cockmon Berthe reciting the former to be the unremarried widow of George E. Cockmon (the record owner of these lands prior to 1915) and the latter to be his sole heir at law. Proof as to the invalidity of the 1915 tax sale, through which appellants claim title, was also adduced by the appellee.

Appellants responded and attacked the validity of appellee's tax title. Appellants also asserted that, even though appellee's tax title be valid, the appellants have the right to redeem those five lots which were forfeited for the 1937 taxes, subsequent to the incompetency of F. A. Rinke. After initial trial of the case, appellee, with leave of the court, reopened the case over appellants' objections and introduced muniments of title, independent of the tax titles, prior to and including his recently acquired Cockmon quitclaim deed, in an effort to prove further deraignment of title from the United States Government.

From the evidence presented, the trial court found that appellee is the owner and in actual possession of said lands; that appellee had established good title in himself by deraignment from the United States Government; that the 1933 ex parte decree vested title to most of the lands in appellee's uncle and that appellee has inherited these lands from his uncle; that no one occupies the lands adversely to appellee; that the deed from the State of Arkansas to Paul Birnbach executed for the delinquent taxes of 1915, from which deed ap-

pellants derive their claim of title, is void and a cloud on appellee's title; that the entire property is fenced and that appellee has adversely occupied and possessed the lands in question and paid taxes thereon for more than seven (7) years last past and has built and maintained improvements thereon. The court denied appellants' motion to strike appellee's further proof of deraignment of title and quieted and confirmed title in appellee. From that decree comes this appeal.

Appellants contend that even though their tax title be considered void, the appellee can prevail only on the strength of his own title in a suit to quiet title. *Corn* v. *Arkansas Warehouse Corp.,* 243 Ark. 130, 419 S. W. 2d 316 (1967); *Griffin* v. *Isgrig,* 227 Ark. 931, 302 S. W. 2d 777 (1957); *Coulter* v. *O'Kelly,* 226 Ark. 836, 295 S. W. 2d 753 (1956); *Meyer* v. *Snell,* 89 Ark. 298, 116 S. W. 208 (1909). Although this proposition is unquestionably correct, it is equally well recognized that a plaintiff in such a suit, having shown his chain of title, may prove the invalidity of a tax sale which constitutes a cloud thereon. See *Patterson* v. *McKay,* 199 Ark. 140, 134 S. W. 2d 543 (1939). Furthermore, the invalidity of appellants' title, if asserted and proved by the true owner of the lands (rather than simply a successive tax deed holder), would preclude redemption of the five lots forfeited for the 1937 delinquent taxes which was subsequent to F. A. Rinke's adjudicated incompetency. *Smith* v. *Thornton,* 74 Ark. 572, 86 S. W. 1008 (1905). Appellants assert that even if appellee has proved his title to the lands in question by way of tax deeds or adverse possession, appellants nonetheless retain their right to redeem these five lots which appellee acquired during Rinke's incompetency. In other words, appellee can only prevail with regard to *all* the lands here in issue by proving title in himself by deraignment from the United States Government.

We do not agree with appellants' contention that the trial court erred in permitting the appellee to reopen the case for the purpose of introducing further proof of deraignment of title. Since the granting of a

new trial, even though the law does not provide for such a motion in chancery cases, is within the sound discretion of the trial court [*Barton-Mansfield Co.* v. *Richardson,* 190 Ark. 612, 80 S. W. 2d 60 (1935); *Hawkins* v. *Bradley,* 178 Ark. 1073, 13 S. W. 2d 291 (1929)], a fortiori the simple re-opening of a case prior to judgment should not be declared error absent manifest abuse of discretion. None is here shown.

Appellants also contend that, upon re-opening of the case, the court erred in admitting into evidence the various deeds and other exhibits demonstrating deraignment of title. Appellants assert that this evidence was outside the scope of the pleadings. The trial court correctly answered such objection by stating that a plaintiff "can amend his complaint to conform to the proof." *Roberts* v. *Burgett,* 209 Ark. 536, 191 S. W. 2d 579 (1946). Ark. Stat. Ann. § 27-1155 (Repl. 1962) authorizes such procedure as follows:

> "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

This statute proceeds to note that the party claiming prejudice because of a variance in proof must demonstrate such prejudice to the satisfaction of the court; and it has long been established that, "unless there has been a manifest abuse of discretion and the complaining party has been materially prejudiced thereby," this court will not disturb the ruling of the trial court. *Rucker* v. *Martin,* 94 Ark. 365, 126 S. W. 1062 (1910). In the case at bar, no abuse of discretion by the court or prejudice to appellants is demonstrated. In fact, the appellants rejected, as will be discussed later, the court's offer to permit them to further investigate the proffered evidence.

In considering whether appellee has sufficiently shown his title to the land, we note that the only real

question involved is whether Annie Cockmon and Claudia L. Cockmon Berthe-were in fact the successors in title to George E. Cockmon, whose title appears largely undisputed. It is true that recitals in a deed (not an ancient document) are not competent evidence to prove that the persons named are heirs of the previous record title holder. *Carter* v. *Thompson,* 167 Ark. 272, 267 S. W. 790, 38 A. L. R. 1053 (1925). The reason that such recitals are not competent is because they are hearsay. Here there is no indication that the grantors in this quitclaim deed were not available to either party, if in fact the trustworthiness of the recitals in their deed was in question. Furthermore, it appears that the appellants did not consider any of the exhibits to be of a spurious nature, nor did they register any specific objections based upon the hearsay character of the facts recited in these exhibits.

It is almost uniformly established that, absent a specific objection, hearsay, if relevant, is also competent and entitled to consideration by an appellate court in support of the trial court's findings. 29 Am. Jur. 2d, Evidence, § 494; 30 Am. Jur. 2d, Evidence, § 1103. Arkansas is in accord. *New Empire Ins. Co.* v. *Taylor,* 235 Ark. 758, 362 S. W. 2d 4 (1962). In *Taylor* the issue was whether he had lost the vision in one of his eyes. From the opinion: "* * * Taylor testified that [Dr.] Myers said -that his [Taylor's] eye 'was completely out, my vision was gone.' While, as also herein mentioned, this was hearsay evidence, it was not objected to, and, therefore, became competent evidence, and due to be considered by the jury. Counsel had some time earlier objected to appellee's reference to a statement purportedly made by the doctor, but this was not a continuing objection, and did not include the quoted testimony." See McCormick on Evidence, § 54 (1954). We have held that a specified objection has the effect of waiving any other objection. *Woods* v. *Pearce,* 230 Ark. 859, 327 S. W. 2d 377 (1959).

In the case at bar, appellants, in the course of specifying their often repeated objections to the admis-

sion of the various deeds by which appellee demonstrad deraignment of title, contended only that they were misled, as noted earlier, by appellee's variance of proof from the pleadings as demonstrated by the following statements:

> COUNSEL: "Now at this point, if the court please, we would like to renew our objection to the introduction of this deed because we have not had any chance whatsoever to determine whether Cockmon was the original owner. It is not pleaded.
>
> \* \* \*
>
> There was no allegation in the pleadings. I have not had an opportunity whatsoever to examine the title, now that he has deraigned from the Government on down. \* \* \*
>
> THE COURT: Do you want that opportunity now, with these new exhibits? If you do, you can do it. The case is not concluded.
>
> \* \* \*
>
> I say I will give you the opportunity to further investigate those exhibits."

Appellants' counsel declined this offer, stating: "I am not saying there is anything spurious about the exhibits."

It does not appear that appellants specifically objected to the hearsay character of the Cockmon-Berthe deed's recitals. Further, since appellants refused the trial court's offer to them of an opportunity to investigate the exhibits, which included the Cockmon-Berthe deed, both the trial court and the adverse party thereby had the right to assume that the veracity of the recitals in the Cockmon-Berthe deed was unquestioned and not in issue. In 5 Am. Jur. 2d, Appeal and Error, § 553, the general rule is that: "The function of an objection is

to bring the matter complained of to the attention of the court for an appropriate ruling, to warn the adverse party, and to lay the foundation for an exception to an adverse ruling. Ordinarily errors to which no objections were made in the court below will not be considered by the appellate court." Appellee, therefore, was entitled to rely upon the evidentiary value of the recitals in his quitclaim deed; and further proof as to the facts recited therein was, in the circumstances, not necessary.

Affirmed.

JONES, J., disqualified and not participating.