Ollis HEARD, Hollis HEARD, and
Richard FERGUSON *v.* STATE of Arkansas

CR 80-133                                   612 S.W. 2d 312

Supreme Court of Arkansas
Opinion delivered March 9, 1981

*John C. Johnson, Jr.*, for appellants.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The three appellants, Ollis and Hollis Heard, twins, and Richard Ferguson, were charged with burglary, with theft of property, and with having two or more previous felony convictions each. At the end of the first stage of a bifurcated trial the court submitted verdict forms only with respect to burglary, overlooking the charge of theft of property. Consequently the jury found the defendants guilty only of burglary. Nevertheless, in the second stage of the trial the jury, without objection, was permitted to fix sentences as follows: Ollis Heard, 20 years for burglary and 10 for theft; Hollis Heard, 10 years for burglary and 3 for theft; Ferguson, 3 years for burglary and 2 for theft. In this appeal from a judgment sentencing all three defendants to imprisonment for both offenses, seven points for reversal are argued.

We need not state the proof in detail, because the sufficiency of the evidence to support the convictions is not questioned. On the night of January 19, 1978, the General Telephone Company office at Stuttgart was broken into, and the company's safe was taken. The safe was later found in an area near Almyra, about 12 miles southeast of Stuttgart. The safe had been chopped open, checks payable to the company were scattered about near the safe, and a gray metal cashbox was missing.

On the night of the burglary the three defendants, riding together in a pickup truck, had gotten stuck in a ditch about halfway between Stuttgart and Almyra and had been pulled out by a witness for the State. Paint scrapings taken from the safe and from paint marks found on the bed of the truck, when scientifically examined, showed almost conclusively that the safe had been transported in the truck bed. Hollis Heard, the only defendant who testified, admitted that the three men got stuck in the truck that night, but he denied their guilt.

The sheriff, in the course of a different investigation about three months later, obtained a search warrant to

search the Heard Twins' Club in Stuttgart for stolen half-pint bottles of whiskey and stolen bottles of gin. In the course of that search Officer Rosegrant picked up a cashbox under a counter and said, "This looks like the one that come out of the telephone company." The officers took the cashbox, which was positively identified as the one stolen from the safe.

It is first argued that the State should not have been permitted to introduce the affidavit for the search warrant and the warrant itself, neither of which was shown to the jury, nor the cashbox, because the existence of those three items had not been disclosed by the State during pretrial discovery. This argument is without merit. The abstract does not show a request for discovery, a claim of surprise, or a motion for a continuance. Moreover, the sheriff's return shows that he left a copy of the warrant with Hollis Heard and that the cashbox was listed as one of the items taken. In the circumstances the trial judge did not abuse the discretion conferred upon him by Criminal Procedure Rule 19.7 in refusing to prohibit the prosecution from using the items.

The second argument questions not only the sufficiency of the search warrant and its supporting affidavit but also the admissibility of the cashbox. Most of the specific objections to the warrant and affidavit now argued were not made below and were therefore waived. *Woods* v. *Pearce*, 230 Ark. 839, 327 S.W. 2d 377 (1959). It was objected below that the Heards' street address was not specifically stated, but that point is without merit and not even argued on appeal. The other objection was that the year in the date of the warrant was shown as 1978 at the top but as 1976 above the issuing judge's signature. All the evidence, however, shows that 1978 was the correct year; so the discrepancy, as the trial judge ruled, was obviously a clerical typographical error. Such documents are normally drafted by nonlawyers in the haste of a criminal investigation and are to be tested in a commonsense and realistic fashion, not with a grudging or negative attitude. *Baxter* v. *State*, 262 Ark. 303, 556 S.W. 2d 428 (1977).

The sufficiency of the supporting affidavit is not

properly presented on appeal, because there was no such objection in the trial court. *Wicks* v. *State*, 270 Ark. 781, 606 S.W. 2d 366 (1980). Nevertheless, the dissenting opinion makes the flat statement: "There is no affidavit in this case." We wholly disagree with that conclusion. The printed form for Affidavit for Search Warrant contained three blank lines for the insertion of the facts establishing the grounds for the issuance of the warrant. The facts stated by the sheriff were so detailed that they required 28 typewritten lines on a separate sheet of paper. That paper was signed by the sheriff, who also initialed the note inserted on the form, "See attached statement." The statement was attached, the sheriff signed the form as affiant, and the jurat was completed by the municipal judge. Hence the statement was incorporated in a simple, practical, and commonsense manner. If there had been any doubt about the authenticity of the attachment signed by the sheriff, he was a witness in the case and could easily have been called to testify. When a matter can readily be clarified in the trial court if a timely objection is made, the failure to object prevents the party from raising the point on appeal. *Smith* v. *Union Nat. Bank of Little Rock*, 241 Ark. 821, 410 S.W. 2d 599 (1967).

As to the cashbox, the officers' conduct met the three-fold standard to be deduced from *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971): First, the plain view doctrine was satisfied, because the officers were acting under the authority of a valid search warrant and had a right to search the premises. Second, the discovery was inadvertent, there being no showing that the officers had hoped to find the cashbox and obtained the search warrant as a subterfuge for entering the premises. Third, Officer Rosegrant at once recognized the cashbox as having probably been stolen in the telephone company burglary. In fact, the informations had been filed only the day before, and Officer Rosegrant obviously knew that such an article had been stolen. In this respect the case differs from *Gatlin* v. *State*, 262 Ark. 485, 559 S.W. 2d 12 (1977), where the officers making a similar search had no knowledge of any particular items, so that the incriminating nature of the articles seized could not have been immediately apparent. Here the converse was true. Absolute certainty was not required, else the officers could not have seized heroin,

for example, because it might prove to be a harmless powder. A reasonable degree of certainty, precluding fishing expeditions, is sufficient. The cashbox was admissible evidence.

Third, the State was properly allowed to impeach its own witness with regard to a comparatively minor matter. Such impeachment is specifically permitted by Uniform Evidence Rule 607, Ark. Stat. Ann. § 28-1001 (Repl. 1979), and the prosecution complied with Uniform Rule 613 in showing that the witness had made a prior statement inconsistent with his testimony. In fact, the principal objection below was that the State had waited too long before adducing the impeaching testimony on rebuttal, but that is a matter resting within the trial court's sound discretion.

Fourth, at the beginning of the second stage of the trial, relating to punishment, the State announced that it had no previous convictions as to the defendant Ferguson. Counsel then sought to introduce, on Ferguson's behalf, evidence relating only to punishment. Proffer was made of the sheriff's testimony that Ferguson had made a confession about the telephone company burglary, corresponding to the State's proof in the case, and that the prosecutor had agreed to try to obtain a suspended sentence for Ferguson. Later on, however, Ferguson recanted, saying his entire statement had been a lie; so the prosecution's agreement was withdrawn. The court refused to allow the proffered testimony to be heard by the jury. (Even without that proof Ferguson received the minimum prison sentences.)

The ruling was correct. Our first habitual criminal statute is Act 228 of 1953. That act enhances the punishment for second, third, and fourth offenses, with a provision that an authenticated record of a conviction is prima facie evidence of the conviction. The act does not expressly allow the defendant to dispute the record of conviction, nor is there any provision for a two-phase trial. In 1965 we held that prior convictions should not be introduced before a verdict of guilty, and we specified how a two-stage trial should be conducted. *Miller* v. *State*, 239 Ark. 836, 394 S.W. 2d 601 (1965).

Two years later the legislature adopted Act 639 of 1967, substituting a somewhat different two-stage trial and also providing that the defendant "shall have the right to deny the existence of prior conviction(s) and to offer evidence in support thereof." Ark. Stat. Ann. § 43-2330.1 (Repl. 1977). Substantially the same provisions were retained in the Criminal Code § 41-1005 (Repl. 1977).

We find no indication of a legislative intention to allow an habitual offender to introduce any evidence during the second stage of the trial except proof to rebut the evidence of previous convictions. The sole purpose of the second stage is to allow the jury to consider possible enhancement of the sentence, not its reduction. The habitual offender has the same opportunity as a first offender to introduce mitigating proof before the jury retires for the first time. Certainly the hardened criminal is not entitled to preferential treatment, which he would receive if, after the finding of guilt, he could for the first time admit his guilt, and make a plea for leniency. The first offender has no similar opportunity. We realize that here Ferguson has no previous convictions, but he must have known that fact, and certainly he could have offered mitigating circumstances during the first stage of the trial. Obviously, he did not then want the jury to know he had first confessed and then retracted his admission of guilt.

The situation is not similar to that presented in the trial of a person charged with capital murder. There the trial is bifurcated because, pursuant to decisions of the Supreme Court, the jury must find aggravating and mitigating circumstances to prevent the possibility of an arbitrary imposition of the death penalty. § 41-1301 and its Commentary. No similar necessity exists in the usual trial of an habitual offender, such trial being bifurcated only to protect the defendant by withholding proof of his earlier convictions until the jury has found him guilty.

Fifth, it is pointed out that the trial court was in error in imposing a separate sentence upon each defendant for theft of property when the jury had not made a finding of guilty upon that charge. Of course that was error, which we correct

by modifying the judgment to eliminate the convictions and sentences for theft of property.

Sixth, the trial judge, in imposing sentences pursuant to the verdicts, failed to ask the defendants if they had any legal cause to show why judgment should not be pronounced. The Criminal Code requires that inquiry, which a trial judge should unquestionably make in every case. § 43-2303. Nevertheless, the defendants were represented by counsel, made no objection, did not file a motion for a new trial, and have not suggested in their appellate brief any possibility whatever of prejudice as a result of the omission. In *Clark* v. *State*, 264 Ark. 630, 573 S.W. 2d 622 (1978), there was a similar lack of any objection to the trial court's merely asking the defendant if he had anything he wished to say. Although in the case at bar there was no inquiry at all, we adhere to our reasoning in *Clark*: "We have held that in capital cases it is necessary to make an objection in the trial court in order to raise the issue on appeal. [Citation.] We further observe that here on appeal, although raised for the first time, there is no suggestion of any prejudice other than the court did not follow the exact wording of the statute. Upon a review of the entire sentencing procedure, we are of the view no prejudicial error as to allocution is demonstrated." Nor can we discover any prejudice in the case at bar.

Seventh, the jury recommended that Ferguson be placed on probation, but the trial judge refused to follow that recommendation. During the jury's deliberations the judge had told them, in response to an inquiry, that they could recommend probation, but the court did not have to follow their recommendation. After the verdicts were returned the judge explained to the jury his reasons for not following their recommendation. He mentioned Ferguson's retraction of his original statement (certainly showing that one statement or the other was false), the fact that other charges had been filed against Ferguson, and the probability that he would be released on parole before serving the entire sentences. Counsel now criticize the reasons given, but the judge stated that he was explaining matters not known to the jury when they recommended probation. Ferguson himself had proffered the sheriff's testimony about the

retraction of his confession and still insists that it should have been received in evidence. We find no abuse of the trial judge's broad discretion in his refusal to follow the jury's recommendation.

Affirmed as modified.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion in this case because I think the search warrant was defective and therefore the items obtained pursuant to it should have been suppressed.

The record contains a printed form entitled "Affidavit for Search Warrant" which has been partially filled in by the municipal judge. The affidavit states that there is reason to believe that there is located certain stolen goods upon the premises known as the Heard Twins Club run by Hollis and Ollis Heard located on Maple Street, Stuttgart, Arkansas, immediately north of Grapes' Dairy Bar. No address is given for either establishment. The affidavit further states that there is now being concealed certain property, namely: two cases of 1/2 pint bottles of whiskey and two cases of 1/5 bottles of Seagram's gin which is property stolen from the Stuttgart Liquor Store, Stuttgart, Arkansas, on or about March 18, 1978. The alleged grounds for search and seizure are as follows: stolen property as aforestated and held in violation of Arkansas law. The final paragraph relating to the facts tending to establish the grounds for the issuance of the search warrant were as follows: "See attached statement." There was indeed attached to the affidavit for search warrant a statement but the statement was unsworn. The attached statement was signed by Sheriff Garrison but it was not dated nor was the place of its origination stated. In the body of the unsworn statement were words to the effect that a confidential informant, proven reliable in the past, told the sheriff that there was some whiskey in the Heard Twins Club on Maple Street and that it was under a tarpaulin in the bathroom. The informant stated there were several boxes of whiskey and gin in the bathtub. A statement from anyone could have been attached to the affidavit for a search

warrant. Maybe this is the statement the municipal judge had in mind and maybe it is not. In addition to these deficiencies, there were seven changes, in type or ink pen. The search warrant was issued at 5:45 p.m. according to the judge's jurat. However, in the body of the warrant it is stated that the affidavit was made at 6:00 p.m. One can conclude that there was an innocent mistake or that the judge issued a blank warrant which was filled in 15 minutes later by the sheriff. The search warrant itself is directed to the Heard Twins Club on Maple Street immediately north of Grapes' Dairy Bar.

Arkansas Rules of Criminal Procedure, Rule 13, governs search and seizure pursuant to a warrant. The first requirement of Rule 13.1 is that the warrant may be issued only by a judicial officer. I think this is the only part of the rule which was complied with. The second requirement under the above rule is that application for a search warrant shall describe with particularity the place to be searched and the things to be seized and shall be supported by one or more affidavits or recorded testimony under oath before a judicial officer. There is no affidavit in this case, and there is no record of any testimony being given under oath before the municipal judge. Rule 13.2 requires the warrant to describe with particularity the date and place where the application for the warrant was made; the judicial finding of reasonable cause; location and designation of the place to be searched; the things constituting the object of the search; and the return date for the warrant. None of these were really strictly complied with.

In the case of *Gatlin* v. *State*, 262 Ark. 485, 559 S.W. 2d 12 (1977), the warrant authorized a search for illegal drugs. The officers seized illegal drugs but they also seized a 19-inch color television, a plastic bag containing $807, silver tableware in a red velvet lined walnut case, triple beam balance scales, and several firearms. The officers seized the items other than illegal drugs on the claim of the "plain view" doctrine. In deciding that the other items seized were not legal, we cited from *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971). The citation was as follows:

> ... The plain view rule applies if (1) the initial intrusion resulting in the "plain view" was lawful, (2) discovery of the object was inadvertent, and (3) the incriminating nature of the object was "immediately apparent." ...

Therefore, even if the warrant were valid in the present case, it is obvious that the plain view doctrine is inapplicable because the box was under a counter and obviously not in plain view. Neither was the box immediately apparently incriminating in nature. One of the officers stated it looked like a box that could have come from another robbery. That is not close to being "immediately incriminating." The place to be searched was located in the city of Stuttgart. No street address was given and no description of the building was included in any of the information. Unless the officers knew of their own knowledge that the Heard twins operated at this place, they would have been unable to locate it from the information on the search warrant. Another reason the search warrant was invalid, in my opinion, was that the warrant was improperly executed. The Heard twins were in jail at the time of the search and seizure. The return on the warrant simply states: "Served in Stuttgart, Arkansas, April 4, 1978, to Hollis Heard, time 6:55 p.m." There was no copy of the warrant attached to the premises searched. Therefore, this is but one of many reasons why the search warrant was invalid.

Since I find the search warrant to be invalid, I would suppress the evidence obtained through it. Even if it were valid, the evidence was not in plain view; and, if it were in plain view, it was not evidence of an immediately incriminating nature. Such evidence simply should not have been admitted.