924 P.2d 581

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Derick George ENDO, Defendant–Appellee.**

**No. 17682.**

Intermediate Court of Appeals of Hawai'i.

Aug. 29, 1996.

As Amended Sept. 16, 1996
and Sept. 17, 1996.

James H. S. Choi, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellant.

---

Alvin Kaohu Nishimura, Deputy Public Defender, on the brief, Honolulu, for defendant-appellee.

BURNS, C.J., WATANABE and KIRIMITSU, JJ.

BURNS, Chief Judge.

The State of Hawai'i (the State) appeals the circuit court's December 10, 1993 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Quash Search Warrant and Suppress Evidence and Motion to Suppress Evidence and Statements. We affirm.

## FACTS

The record contains an *"AFFIDAVIT IN SUPPORT OF SEARCH WARRANT"* signed by police officer George E. Clark (Officer Clark), and a *"SEARCH WARRANT,"* submitted by Officer Clark to a district court judge for signature.

Officer Clark used a pre-printed form in preparing the Affidavit in Support of Search Warrant (Affidavit) and typed on the blank lines of the form the information which he believed constituted probable cause justifying the issuance of a search warrant.

At the bottom of the preprinted form following Officer Clark's signature was a jurat [1] which read as follows:

Subscribed and sworn to before me this _____ day of _____, _____, at _____ a.m.

Before the Affidavit was presented to the district court judge (Judge No. 1), Officer Clark typed information on the underlined but otherwise blank spaces as follows:

Subscribed and sworn to before me this 14th day of May, 1992, at _____ a.m.

When Judge No. 1 signed the jurat, he wrote the number "5" in the blank space and wrote the letter "p" over the "a."

The attachments to the Affidavit have no preprinted parts. Attachment No. 1 to the Affidavit states in relevant part as follows:

That on May 13th, 1992, Wednesday, at approximately 2200 hours, your affiant met with a Confidential Informant (hereinafter referred to as the C.I.) at the Pearl City Police Station; . . . .

That on May 14th, 1992, Thursday, at approximately 0015 hours, your affiant utilized a Sony TCM–17 tape recorder and recorded the CI's telephone conversation between the CI and ENDO; . . . .

That on May 14th, 1992, at approximately 0030 hours, a female police officer searched the CI'S person for any drugs or other unauthorized items; that your affiant was iformed [sic] that said search was met with negative results; that Officer Virgil FORD of the District 3 Crime Reduction Unit drove the CI to ENDO's residence in his truck arriving at approximately 0057 hours on May 14th, 1992; . . . .

. . . [A]fter the transaction the CI exited ENDO'S residence and walked back to Officer FORD'S truck; that on May 14th, 1992, at approximately 0100 hours, Officer FORD recovered the aforementioned zip lock packet of purported methamphetamine from the CI; . . . .

On May 14, 1992, at approximately 0115 hours, Officer FORD initiated a Promoting a Dangerous Drug in the Second Degree case, . . . .

That during the de-briefing Officer FORD provided your affiant with the following facts; on May 14th, 1992, at approximately 0057 hours, Officer FORD parked his truck in front of 98–218 Hekaha Street. . . .

On May 14th, 1992, at approximately 0115 hours, chemist Tracy TANAKA of the Honolulu Police Department Crime Laboratory analyzed the purported methamphetamine which the CI purchased from ENDO; . . . .

Attachment No. 3A to the Affidavit states in relevant part "[t]hat your affiant commence [sic] the actual physical mechanics of

---

1. *Black's Law Dictionary,* 852 (6th Ed.1990) defines "jurat" as follows:
   · Certificate of officer or person before whom writing was sworn to. In common use term is employed to designate certificate of competent administering officer that writing was sworn to by person who signed it. The clause written at the foot of an affidavit, stating when, where, and before whom such affidavit was sworn.

preparing this affidavit and attached search warrant at 2:00 a.m. on May 14, 1992[.]"

The Search Warrant (Warrant) also started as a preprinted form with blank spaces for the insertion of information. Officer Clark typed onto the form the necessary additional information and took the Affidavit and Warrant to Judge No. 1 at Judge No. 1's residence where he watched Judge No. 1 sign the Warrant.

The bottom of the preprinted form of the Warrant stated as follows:

GIVEN UNDER MY HAND, and dated on this _____ day of _____, 1992, at _____, City and County of Honolulu, State of [Hawai'i].

Before the Warrant was presented to Judge No. 1, Officer Clark typed in the blank spaces of the Warrant as follows:

GIVEN UNDER MY HAND, and dated on this 14th day of April, 1992, at _____, City and County of Honolulu, State of [Hawai'i].

When Judge No. 1 signed the Warrant, he wrote "5 PM" in the blank space.

As required by Hawai'i Rules of Penal Procedure (HRPP) Rule 41(d), the Warrant stated that "[t]his warrant may be served and the search made ... for a period not to exceed ten (10) days from its issuance."

On the evening of May 14, 1992, when Officer Clark and other police officers conducted the search pursuant to the Warrant, the officers recovered methamphetamine and drug paraphernalia and arrested defendant-appellee Derick George Endo (Endo).

On July 20, 1993 Endo was indicted for Promoting a Dangerous Drug in the Third Degree, Hawai'i Revised Statutes (HRS) § 712–1243 (1993), and Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (1993).

On October 5, 1993 Endo filed a Motion to Suppress Items of Evidence and Statements (M/S) and a Motion to Quash Search Warrant and to Suppress Evidence (M/Q).

The memorandum in support of the M/S states, in relevant part, that "the police executed a search warrant upon the premises of 98–218 Hekaha Street on May 14, 1992 at about 2100 hours. It is clear that the search warrant was invalid as it had expired ten days after its issuance [on] April 14, 1992."

In contrast, the M/Q states in relevant part that Endo "moves this Court for an order quashing the affidavit presented in support of the request for the issuance of the search warrant issued on May 14, 1992 for the premises and residence located at 98–218 Hekaha Street[.]"

At the October 14, 1993 hearing on the M/S and M/Q, Officer Clark testified in relevant part as follows:

Q. Okay. What is—what has been marked as State's Exhibit 1?

A. This is the search warrant I prepared on April 14th, 1992.[2]

   *    *    *    *    *    *

Q. Okay. When did you commence, I guess, start preparing that search warrant?

A. 2:00 a.m. on the 14th of May, 1992.[3]

   *    *    *    *    *    *

Q. After you prepared the paperwork for the search warrant in this case, what did you do?

   *    *    *    *    *    *

A. I met with [Judge No. 1] who read the search warrant and signed it, subsequently signed it.

Q. Okay. Did you actually witness (Judge No. 1) signing the document?

A. Yes, I did.

   *    *    *    *    *    *

Q. What happens after the judge signed [sic] the search warrant?

A. Normally it's registered. However, I didn't register it at that time. I took it to the Pearl City station.

Q. When you say registered, can you explain to the court what that means?

---

2. There is no explanation in the record of the contradiction between this testimony by Officer Clark and his subsequent testimony.

3. See footnote 2.

A. Yeah. There's a—there's a book in District Court, you have to fill out your name, search warrant. They give you a number for it, the search warrant.[4]

Q. Okay. And why did you take the, I guess, the search warrant straight to or back to Pearl City station?

A. Because of the time the judge signed it.

Q. Okay. When did he sign, I guess, the search warrant?

A. 5:00 p.m. on the 14th.

Q. Okay. What happened back at Pearl City after you obtained the signed search warrant?

A. Met with other Crime Reduction Unit members at which time we briefed and executed the search warrant that evening.[5]

\* \* \* \* \* \*

Q. Do you recall the address of that house?

A. 98–218 Hekaha Street.

Q. Was the defendant also arrested at that time?

A. Yes, he was.

\* \* \* \* \* \*

Q. . . .

Officer Clark, when if at all did you know of, I guess, any mistakes in [the search warrant]?

A. Today when I was subpoenaed, came to court.

Q. Okay. And what mistake do you notice in the document at this time?

A. The date on the search warrant, it says April where the judge signed, should be May 14th.[6]

At the conclusion of the October 14, 1993 hearing, the district court judge (Judge No. 2) stated:

THE COURT: Okay. Court's ready to rule. It's clear from the documents submitted, testimony of the witness, that there

was a typographical error in this particular case. . . .

The court's of the opinion that in this particular case, even though there was a typographical error, it's important that all these materials, statements of facts be submitted together. Based on the—the two conflicting dates, court's of the opinion that the search warrant in this particular case was not proper and not adequate.

Court's also of the opinion that the case cited by the prosecution, State v. Sepa talks about material misstatements of fact. In this particular case, there's no more material fact than the date of the search warrant. And even in the Sepa case, talks—the court talks about admitting those material misstatements of fact and, basing the analysis based on the—the—the documents minus that fact in this case, if you took out the April date then you would have no date at all on the search warrant. So based on all these reasons, court's going to grant the defense's motions.

The circuit court's December 10, 1993 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Quash Search Warrant and Suppress Evidence and Motion to Suppress Evidence and Statements state in relevant part as follows:

### FINDINGS OF FACT

1. The search warrant was signed and dated by [Judge No. 1] on April 14, 1992.

2. The affidavits in support of the warrant by Officer George Clark were dated May 14, 1992.

\* \* \* \* \* \*

5. The search warrant was executed upon the premises of 98–218 Hekaha Street on May 14, 1992.

5. [sic] Based on the conflicting dates, the search warrant was not proper and not adequate at any time ten days after April 14, 1992.

---

4. Although we are unaware of any statute, rule, or order requiring this procedure, we do not disagree with it.

5. See footnote 2.

6. See footnote 2.

## CONCLUSIONS OF LAW

1. The search warrant in itself is such an important document that certain facts are stated as such.

2. There is no more material fact than the date that is indicated as to when the search warrant is effective.

3. The search warrant was not valid on May 14, 1992.

## THREE PRELIMINARY OBSERVATIONS

First, on the subject of when Judge No. 1 signed the search warrant, there is no explanation in the record of why Finding of Fact (FoF) No. 1 (that the search warrant was signed on April 14, 1992) differs from Judge No. 2's oral finding (that there was a typographical error).

Second, we disagree with Judge No. 2's application of *State v. Sepa*, 72 Haw. 141, 808 P.2d 848 (1991). In *Sepa*, the Hawai'i Supreme Court held that once it is established that an affidavit supporting a search warrant contains material misstatements of fact, the reviewing court must determine whether the affidavit's content, minus the false material, is sufficient to establish probable cause. However, the *Sepa* rule applies to the affidavit, not to the search warrant.

Third, since the record is undisputed that Judge No. 1 did not date the Search Warrant, in that regard FoF No. 1 is clearly erroneous.

## DISCUSSION

■ HRS § 803–31 (1993) defines a search warrant as "an order in writing made by a judge or other magistrate, directed to an officer of justice, commanding the officer to search for certain articles[.]" In other words, a search warrant is a written court order commanding an officer of justice to invade a person's privacy.

As noted in *State v. Kealoha*, 62 Haw. 166, 613 P.2d 645 (1980), the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution require specificity in the search warrant's answers to the questions of who, where, and what. The latter constitutional provision states in relevant part as follows:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized....

With respect to the United States Constitution, the following federal precedent recognizes a good faith exception to many constitutionally invalid warrants:

> The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure "work[s] no new Fourth Amendment wrong." *United States v. Calandra*, 414 U.S. 338, 354 [94 S.Ct. 613, 623, 38 L.Ed.2d 561] (1974).... The rule thus operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra, supra*, at 348 [94 S.Ct. at 620.]

*United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677, 687–88 (1984).

> "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694.

> It is the magistrate's [or judge's] responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment....

> We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion....

\*     \*     \*     \*     \*     \*

... [D]epending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid....

*Id.* at 921–23, 104 S.Ct. at 3419–21, 82 L.Ed.2d at 697–99.

The Hawai'i Rules of Penal Procedure (HRPP) Rule 41 states in relevant part as follows:

**Rule 41. Search and seizure..**

\*    \*    \*    \*    \*    \*

(c) *Issuance and contents.* ... The warrant shall be directed to a police officer or some other officer authorized to enforce or assist in enforcing any law of the State of [Hawai'i] or any political subdivision thereof. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property specified. The warrant shall contain a prohibition against execution of the warrant between 10:00 p.m. and 6:00 a.m., unless the judge permits execution during those hours in writing on the warrant. It shall designate the judge to whom it shall be returned.

(d) *Execution and return with inventory.* The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be verified by the officer. The judge shall upon request cause to be delivered a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

(e) *Motion for return of property and to suppress evidence.* A person aggrieved by an unlawful search and seizure may move the court having jurisdiction to try the offense for the return of the property, or to suppress for use as evidence anything so obtained, or both. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial.

Although neither the United States Constitution nor the Hawai'i Constitution requires specificity in the search warrant as to when the search warrant should issue, Federal Rules of Criminal Procedure (FRCP) Rule 41(c)(1) and HRPP Rule 41(c) require that the search warrant "shall command the officer to search, within a specified period of time not to exceed 10 days."

The federal courts have applied the following good faith exception to the requirements of FRCP Rule 41(c).

[The 11th Circuit Court of Appeals] has adopted the Ninth Circuit standard for analyzing alleged violations of [FRCP] Rule 41 relating to search warrants:

[U]nless *a clear constitutional violation occurs,* noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that *the search might not have occurred or would not have been so abrasive if the rule had been followed,* or (2) there is *evidence of intentional and deliberate disregard of a provision in the Rule.*

*United States v. Loyd,* 721 F.2d 331, 333 (11th Cir.1983) (per curiam) (quoting *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir.1981) (citations omitted) (emphasis added)).

*United States v. Gerber,* 994 F.2d 1556, 1560 (11th Cir.1993).

Notwitstanding the good faith exception, the court in *United States v. Williamson,* 1 F.3d 1134 (10th Cir.), invalidated a warrant whose sole description of the premises was

"the premises located at Star Route Box 302, Tijeras, New Mexico." *Id.* at 1136. Its explanation of the invalidation was as follows:

Finally, we agree with the district court that the government is not entitled to the "good faith" exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Supreme Court has made clear that "a warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3421. This is precisely such a case: no reasonable officer could have concluded that this warrant—which provides no meaningful description of the premises—was valid....

*Id.*

Although a facially expired search warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid, the federal courts probably will not apply the *Williamson* "so facially deficient ... that the executing officers cannot reasonably presume it to be valid" rationale to a facially expired search warrant.

Hawai'i has an additional relevant constitutional provision. Article I, section 6, of the Hawai'i Constitution states that "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest." Especially in light of this provision, the Hawai'i Supreme Court does not recognize a good faith exception in situations where the police search an individual's home based on their reasonable mistaken belief that an authorized person has consented to the search.

Our willingness to afford greater protection of individual privacy rights than is provided on the federal level arises from "our view [that] the right to be free of 'unreasonable' searches and seizures under article I, section [7] of the Hawai[']i Constitution is enforceable by a rule of reason which *requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary.*" Thus, "each proffered justification for a warrantless search must meet the test of *necessity* inherent in the concept of reasonableness." ...

Moreover, unlike its federal counterpart, article I, section 7, specifically protects against "invasions of privacy." ...

\* \* \* \* \* \*

Although we acknowledge that the Hawai'i exclusionary rule serves the valuable purpose of deterring governmental officials from circumventing the protections afforded by the Hawai'i Constitution, ..., we now pronounce that an equally valuable purpose of the exclusionary rule under article I, section 7, is to protect the *privacy* rights of our citizens....

*State v. Lopez,* 78 Hawai'i 433, 445–46, 896 P.2d 889, 901–02 (1995) (citations omitted; emphasis in original).

■ In Endo's case, the Warrant commanded the officer to search "for a period not to exceed ten (10) days from its issuance." Although the Warrant was in fact issued on May 14, 1992 and Officer Clark knew that the Warrant was in fact issued on May 14, 1992, the Warrant stated on its face that it was issued on April 14, 1992. We know that on May 14, 1992, Judge No. 1 signed the Warrant authorizing a search within ten days of April 14, 1992. Although Judge No. 1 was not called as a witness to explain why, we assume that he was unaware that the warrant was facially expired when he signed it and that his unawareness was a result of his mistake.

We know of no rule of law that affords the person who is searched, or whose premises are searched, the right to demand to see the search warrant before the search is made. After the property is taken, however, HRPP Rule 41(d) requires that "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant[.]" A facially expired search warrant may be reasonably expected to cause the person to whom the search warrant was given to immediately object and resist. For obvious reasons, such circumstances should be avoided.

■ The cause of a search warrant being facially expired when the search is executed

may be the mistake of the officer who applied for it, the judge who signed it, and/or the officer who executed it. Does the Hawai'i Constitution excuse any of these mistakes?[7] Balancing the uniqueness of Hawai'i's Constitution, the specificity requirements imposed by HRPP Rule 41(c), the desire to motivate the officials who prepare, sign, and execute search warrants not to prepare, sign, and execute facially expired search warrants, and the desire and ability to avoid searches pursuant to facially expired search warrants, against the State's desire to have the judiciary validate searches pursuant to search warrants that are facially expired when the searches are made because the officers who applied for them, the judges who signed them, and/or the officers who executed them made a mistake, we conclude that the Hawai'i Constitution does not permit the validation of searches pursuant to search warrants that are facially expired when the searches are made.

Accordingly, we vacate the following underlined parts of FoF No. 1: "The search

warrant was *signed and* dated *by [Judge No. 1] on* April 14, 1992." In all other respects, we affirm the December 10, 1993 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Quash Search Warrant and Suppress Evidence and Motion to Suppress Evidence and Statements.

---

7. In *State v. Steffes*, 269 Mont. 214, 887 P.2d 1196 (1994), the Montana Supreme Court validated a search pursuant to a warrant that was dated June 19, 1991, but was executed on June 18, 1991. The Court noted that

the State called Justice of the Peace Pedro Hernandez to testify concerning the discrepancy between the dates. Justice Hernandez swore that he signed the application at approximately 11:25 a.m. on June 18, 1991, and that the search warrant was issued at the same time. Justice Hernandez also testified that he did not type the June 19, 1991 date on the search warrant but he stated that date was already on the search warrant when he signed it. Through Justice Hernandez' testimony, the District Court determined the discrepancy between the dates was merely technical, and did not affect the substantial rights of the defendant. . . .

In *State v. Dalton*, [132 Or.App. 36] 887 P.2d 379 (Or.App.1994),

[o]n November 9, 1993, [the officer] presented a magistrate with an affidavit to which [the officer] was sworn. With the affidavit was an application for a warrant to search defendant's residence. The magistrate signed [the officer's] affidavit and dated it November 9, 1993. The magistrate also issued and signed a search warrant for defendant's residence, but mistakenly dated it October 9, 1993. The warrant was executed by [the officer] on November 10, 1993, the day after its issuance.

*Id.* 887 P.2d at 379–80. An Oregon statute required that search warrants generally be executed within five days of their issuance. The court held that the inadvertent misdating of an otherwise facially valid search warrant does not require suppression because "[t]he misdating of the warrant was simply a scrivener's error; it did not frustrate the constitutional objective served by the statutory requirement that search warrants be dated and executed within five days of their issuance." *Id.* at 380.

Based on a Texas statute that codifies the good-faith exception enunciated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), Texas appears to be the most liberal jurisdiction in matters involving errors in search warrants. When the dispute involves a date in the warrant, the warrant may be validated by evidence corroborating the claim of a typographical error. *Green v. State*, 799 S.W.2d 756 (Tex. Crim.App.1990).

In *Heard v. State*, 272 Ark. 140, 612 S.W.2d 312 (1981), the Arkansas Supreme Court validated a search pursuant to a warrant where the year in the date of the warrant was shown as 1978 at the top but as 1976 above the issuing judge's signature. All the evidence showed that 1978 was the correct year. The court stated that "[s]uch documents are normally drafted by nonlawyers in the haste of a criminal investigation and are to be tested in a commonsense and realistic fashion, not with a grudging or negative attitude." (Citation omitted.)